## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

TRISTAN L. SAILEM,

        Plaintiff,

    v.

KILOLO KIJAKAZI, Acting Commissioner of
Social Security,

        Defendant.

CIVIL ACTION NO.: 2:21-cv-103

## REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Geoffrey S. Casher ("the ALJ" or "ALJ Casher") denying her claim for disability benefits and Supplemental Security Income.  Plaintiff urges the Court to reverse or remand for reconsideration of the ALJ's decision. Doc. 13.  Defendant asserts the Commissioner's decision should be affirmed.  Doc. 16.  For the following reasons, I **RECOMMEND** the Court **AFFIRM** the ALJ's decision.  I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

### BACKGROUND

Plaintiff filed an application for Disability Insurance Benefits and Supplement Security Income on September 20, 2019, alleging an initial onset date of August 2, 2019.  R. 21.[1]  The

---

[1]    A transcript of the entire proceedings before the Social Security Administration appears at Document Numbers 11-1 through 11-9.  Although the transcript is broken into multiple PDF documents, each with its own CM/ECF docketing number, the transcript bears individual page numbers that run sequentially through the entire transcript.  Record citations in this Report (identified with "R.") are to the individual transcript page numbers.  For efficiency, no reference to the CM/ECF docketing number or the respective PDF page numbers is provided here.

claims were initially denied on December 17, 2019, and again upon reconsideration on April 1,

2020.  Id.  Plaintiff filed a written request for a hearing on April 10, 2020.  Id.  On November 17,

2020, ALJ Casher held a telephonic hearing, at which Plaintiff, who was represented by counsel,

attended by telephone and testified.  Id.  Pamela Joann Harris, a vocational expert, also appeared

at the hearing.  Id.  ALJ Casher denied Plaintiff's claim for disability after the hearing in a

decision issued on February 3, 2021.  R. 29.  The Appeals Council denied Plaintiff's request for

review, making the ALJ's decision the final decision of the Commissioner.  R. 1.

Plaintiff, born on August 17, 1978, was 40 years old at the time of the alleged onset date

and 42 years old at the time of the ALJ's decision in 2021.  R. 44–45.  She has a high school

education and previously worked as a store manager at Dollar General and Flash Foods.  R. 46–

47, 58, 227, 539.

## DISCUSSION

### I.      The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act qualifies the definition

of disability as follows:

> An individual shall be determined to be under a disability only if [her] physical or
> mental impairment or impairments are of such severity that [s]he is not only
> unable to do [her] previous work but cannot, considering [her] age, education, and
> work experience, engage in any other kind of substantial gainful work which
> exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).  Pursuant to the Act, the Commissioner has established a five-step

process to determine whether a person meets the definition of disability.  20 C.F.R. §§ 404.1520,

416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity."  Id.

If the claimant is engaged in substantial gainful activity, then benefits are immediately denied.

Id.  If the claimant is not engaged in such activity, then the second inquiry is whether the

claimant has a medically severe impairment or combination of impairments.  Id. at 140–41.  If

the claimant's impairment or combination of impairments is severe, then the evaluation proceeds

to step three.  The third step requires a determination of whether the claimant's impairment

meets or equals one of the impairments listed in the Code of Federal Regulations and

acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful

activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v.

Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004).  If the impairment meets or equals one of the

listed impairments, the plaintiff is presumed disabled.  Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential

evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from

performing past relevant work, i.e., whether the claimant has the residual functional capacity to

perform her past relevant work.  Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693

(11th Cir. 2013).  A claimant's residual functional capacity "is an assessment . . . of the

claimant's remaining ability to do work despite [her] impairments."  Id. at 693–94 (ellipsis in

original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  If the claimant is

unable to perform her past relevant work, the final step of the evaluation process determines

whether she is able to make adjustments to other work in the national economy, considering her

age, education, and work experience.  Phillips, 357 F.3d at 1239.  Disability benefits will be awarded only if the claimant is unable to perform other work.  Yuckert, 482 U.S. at 142.

Here, the ALJ followed this sequential process to determine Plaintiff met the insured status requirements of the Social Security Act to remain insured through December 31, 2023, and had not engaged in substantial activity since her alleged onset date, August 2, 2019, through her date last insured.  R. 24.  At step two, ALJ Casher determined Plaintiff had the following severe impairments: avascular gross left hip total hip replacement; obesity; chronic pain syndrome; poly particular pain; lumbar degenerative disc disease; left lower extremity radicular pain; right total hip replacement; and right knee osteoarthritis.  Id.  The ALJ determined Plaintiff also had the following non-severe impairments: hypertension; GERD ("gastroesophageal reflux disease"); and tobacco use disorder.  Id.  At the third step, the ALJ determined Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of a listed impairment. Id.

ALJ Casher found Plaintiff had the residual functional capacity ("RFC") to perform work at the sedentary exertional level with the following exceptions:

> [W]alking 2 hours of 8 hour workday, and six or more of seated work.  With occasionally bending, stooping, but no kneeling, crouching, no crawling. Frequent balancing, occasional ramps and stairs, but no ladders, ropes, or scaffolds.  No exposure to the extremes of cold or wetness.  No exposure to vibration machines the [sic] cause vibration, no exposure to hazardous conditions such as unprotected heights, dangerous machinery, or uneven moving surfaces. Further limits due to pain of simple routine task involving no more than simple short instructions and simple work-related decisions with few workplace changes. There should be only no bilateral lower extremity pedal controls.

R. 24–25.

At the next step, the ALJ determined Plaintiff could not perform her past relevant work.

R. 28.  The ALJ concluded at the fifth and final step Plaintiff could perform jobs such as

addresser, document preparer, and type copy examiner, all of which exist in significant numbers in the national economy.  R. 29.

## II.    Issues Presented

Plaintiff asserts three enumerations of error: (1) the ALJ did not properly consider the impact and frequency of Plaintiff's treatment, as required by Social Security Ruling 96-8p; (2) the ALJ failed to accurately state the contents of certain medical evidence in his decision; and (3) the Appeals Council erred in its determination Plaintiff's newly submitted evidence does not require remand.  Doc. 13-1 at 10–18.

## III.    Standard of Review

It is well-established judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence" and whether the Commissioner has applied appropriate legal standards.  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence.  Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved.  The evidence relied upon must be relevant evidence that a reasonable mind would find adequate to support a conclusion.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1260 (11th Cir. 2007).  The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence.  Dyer, 395 F.3d at 1210.  In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards.

Failure to delineate and apply the appropriate standards mandates the findings be vacated and remanded for clarification. <u>Cornelius</u>, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision. <u>Wiggins v. Schweiker</u>, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* <u>Lane v. Astrue</u>, No. 8:11-CV-345-T-27, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

## IV.    The ALJ Appropriately Considered Plaintiff's Treatment Records

Plaintiff argues ALJ Casher failed to comply with Social Security Ruling ("SSR") 96-8p because he failed to properly consider the impact of Plaintiff's treatment, specifically the frequency of her treatment. Doc. 13-1 at 10–15; Doc. 19 at 2–6. Plaintiff argues the ALJ should have addressed this issue because Plaintiff's treatment would require too many absences to maintain employment. Doc. 13-1 at 11.

The Commissioner says the ALJ made a proper determination, even considering the frequency of Plaintiff's appointments. The Commissioner agrees with Plaintiff the ALJ must "consider the effects of a claimant's treatment in conjunction with the other evidence of record." Doc. 16 at 7. However, the Commissioner argues "[t]he ALJ properly considered the type and frequency of treatment" and Plaintiff did not show her appointments would result in unscheduled absences from work or other functional limitations. <u>Id.</u> at 8.

### A.    Legal Standard

Social Security Rulings "are binding on all components of the Social Security Administration."  20 C.F.R. § 402.35(b)(1).  Social Security Ruling 96-8p "state[s] the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) . . . ."  SSR 96-8P, 1996 WL 374184, at *1 (July 2, 1996).  The ALJ must make RFC assessments at steps four and five of the sequential evaluation process.  Id.  The policy interpretation explains each "RFC assessment must be based on *all* relevant evidence in the case record," including "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)."  Id. (emphasis in original).

In Cherkaoui v. Commissioner of Social Security, 678 F. App'x 902, 904 (11th Cir. 2017), the Eleventh Circuit Court of Appeals held "whether the number of medical appointments affects [a claimant's] ability to work is not an appropriate consideration for assessing her residual functional capacity" under SSR 96-8p.  "Nonetheless, while a considerable number of medical appointments do not render a claimant disabled, the ALJ is still required to consider all relevant evidence of record, including the 'effects of treatment,' such as the frequency and duration of treatment, during the assessment of a claimant's RFC."  Ledford v. Comm'r of Soc. Sec., No. 8:20-CV-2516, 2022 WL 2195001, at *10 (M.D. Fla. June 1, 2022), *report and recommendation adopted,* No. 8:20-CV-2516, 2022 WL 2193158 (M.D. Fla. June 17, 2022) (citing SSR 96-8p).

### B.    The Record Before the ALJ

Given the requirement of SSR 96-8p, Plaintiff contends the ALJ should have considered the record evidence of the effects of her treatment, the vocational expert's hearing testimony, and Plaintiff's post-hearing letter brief to the ALJ.  Doc. 19 at 2.

### 1.      Plaintiff's history of treatment.

Plaintiff had 52 medical appointments related to her impairments between August 2, 2019, when she alleges her disability began, and December 31, 2020.  R. 451–755; see also Doc. 13-1 at 12–14.  In 2019, Plaintiff had nine appointments in five months after her alleged onset date.  Id.  In 2020, Plaintiff had 43 appointments related to her impairments.  Id.  These appointments included visits and follow-up visits for back, neck, knee, and hip pain; office visits for pain injection treatments; MRI and x-ray examinations and reviews; hip surgery; and physical therapy.  Id.  The record shows these appointments were with seven different medical providers.  R. 451–755.

### 2.      The vocational expert's testimony.

The ALJ examined the vocational expert during the telephonic hearing.  R. 57–61.  The vocational expert answered several questions from the ALJ about whether a person with certain hypothetical functional limitations could find jobs in the national economy.  Id.  At the end of the hearing, Plaintiff's counsel asked the vocational expert, "Can you give me an idea [at the sedentary jobs the vocational expert listed for the ALJ,] of what level of absenteeism would be tolerated on a sustained basis?"  R. 61.  The vocational expert answered, "One per month will be tolerated, preferably less, who [sic] would be preferred, but one per month."  Id.  The vocational expert received no further questions.  The ALJ concluded the hearing, leaving the record open for post-hearing records and development.  Id. at 62.

### 3.      Plaintiff's letter brief.

After the hearing, before the ALJ issued a decision, Plaintiff submitted a post-hearing letter brief.  R. 315–16.  In it, Plaintiff's counsel argued, "The medical evidence in this claim shows that Ms. Saliem would have been absent from work well in excess of [one day a month]

simply by virtue of the frequency of medical treatment she received for her orthopedic conditions."  R. 316.  Plaintiff's counsel described Plaintiff's numerous medical appointments and summarized vocational expert's absenteeism testimony.  Id.  The letter ended, "We respectfully submit that Ms. Saliem should be found disabled at the very least due to the impact of her necessary frequent therapy, testing, surgery, and extended recovery on her ability to be available for work."  Id.

### C.    The ALJ Properly Considered the Relevant Evidence

The ALJ properly considered all the relevant evidence in the record, although his decision did not expressly discuss absenteeism or the frequency of Plaintiff's treatment.  "Courts once wrestled with whether ALJs should make explicit findings on this issue, but it is well 'settled now that reviewing courts generally assume that administrative [RFC] assessments include *implicit* findings of ability to work on a regular and continuing basis.'"  J.P. v. Comm'r of Soc. Sec. Admin., No. 120CV12, 2021 WL 1894146, at *3 (M.D. Ga. Mar. 19, 2021) (citing Parker v. Barnhart, 431 F. Supp.2d 665, 669 (E.D. Tex. 2006) (emphasis in original)).  Further, a vocational expert's testimony on absenteeism during a hearing before an ALJ indicates the ALJ properly considered the issue.  Id. at *2; Battle v. Comm'r of Soc. Sec., No. 2:20-CV-96, 2021 WL 1207757, *10 (M.D. Fla. Mar. 31, 2021) (affirming ALJ decision where "the ALJ considered Battle's claim of absenteeism as shown by posing a hypothetical question to the vocational expert that included missing work two or more days per month due to a combination of physical impairments.").

Here, the ALJ discussed the medical testing and treatment Plaintiff received from seven different providers in his decision.  R. 26–27.  Although the ALJ did not expressly discuss the effects and frequency of Plaintiff's medical appointments in his decision, the consideration of

these issues is implicit in the ALJ's detailed discussion of Plaintiff's treatment records.  Also, the vocational expert testified as to the effects of absenteeism at a hearing before the ALJ.  This testimony, in the presence of the ALJ, demonstrates the ALJ considered the issue as required. Finally, Plaintiff's post-hearing letter brief did not point to any medical evidence, other than the medical appointments themselves, supporting Plaintiff's claim she "would have been absent from work well in excess" one day per month.  Thus, the ALJ was not required to consider this bare legal argument as evidence of the effects and frequency of treatment under SSR 96-8p.

Plaintiff argues Cherkaoui is an unpublished, non-binding decision and cites Deandrea v. Berryhill, No. 8:17-CV-2195, 2019 WL 1376520 (M.D. Fla. Mar. 27, 2019), as an alternative approach.  Doc. 19 at 3.  In Deandrea, the court remanded the ALJ's disability determination because the ALJ failed to consider the frequency of the claimant's treatment.  2019 WL 1376520, at *3.  The claimant showed a record of disability-related treatment appointments over six years, averaging "approximately three days of treatment per month."  Id.  The court ruled the ALJ failed to address this issue and, thus, failed to apply the correct legal standards, citing SSR 96-8p.  Id.  Plaintiff argues her appointments averaged more than three per month, so this case, like Deandrea, warrants remand.

Although not binding, Cherkaoui is persuasive.  Further, unlike Deandrea, there is nothing in this case showing the ALJ failed to apply the correct legal standards.  In fact, the ALJ expressly stated he was applying SSR 96-8p.  R. 23.  The fact Plaintiff had 52 medical appointments over 17 months does not, on its own, constitute evidence of future absenteeism. Instead, any connection between Plaintiff's appointments and future absenteeism "is purely speculative as it is based solely on her 'general medical history.'"  Hairston v. Saul, No. 5:20-CV-119, 2021 WL 3132733, at *9 (N.D. Fla. July 9, 2021), *report and recommendation adopted,*

10

No. 5:20-CV-119, 2021 WL 3131676 (N.D. Fla. July 23, 2021) (citing Rivero v. Comm'r of Soc. Sec., No. 2:16-CV-845, 2018 WL 1466387, at *6 (M.D. Fla. Mar. 26, 2018)).  Additionally, the ALJ heard testimony about absenteeism from the vocational expert during the hearing. See Battle, 2021 WL 1207757, *10 ("And unlike Deandrea, in this case the ALJ considered Battle's claim of absenteeism as shown by posing a hypothetical question to the vocational expert that included missing work two or more days per month due to a combination of physical impairments.").  Importantly, there is nothing in the record suggesting Plaintiff would need to miss more than one day of work a month for medical treatment in the future or Plaintiff could only schedule her treatment during working hours.

Because the ALJ properly considered the evidence before him, I find no error in his RFC determination or his denial of Plaintiff's claim for disability benefits and Supplemental Security Income.

## V.     The ALJ's Characterization of the Evidence Does Not Justify Reversal or Remand

Plaintiff argues the ALJ misstated or mischaracterized some of Plaintiff's evidence in the written RFC determination.  Doc. 13 at 15–17.  In her Response, the Commissioner argues the ALJ's decision is supported by substantial evidence, regardless of any errors in the ALJ's written decision, and the Court should not now reweigh the evidence on judicial review.  Doc. 16 at 8–12.

### A.     Legal Standard

Social Security Regulations outline a five-step, sequential evaluation process to determine whether an individual is disabled.  See 20 C.F.R. § 404.1520(a)(4).  At step four, the ALJ must evaluate whether the individual has the RFC to perform past relevant work.  Rodriguez v. Berryhill, 836 F. App'x 797, 805–06 (11th Cir. 2020) (citing Phillips v. Barnhart, 357 F.3d

1232, 1237 (11th Cir. 2004) (citing Regulations)).  The RFC is "that which an individual is still able to do despite the limitations caused by his or her impairments."  Id. (citing Phillips, 357 F.3d at 1238).  The ALJ considers all the record evidence in making the determination of the individual's RFC.  Id.; see also 20 C.F.R. § 404.1545(a)(2) ("If you have more than one impairment, we will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity.").  An ALJ's RFC assessment must also be supported by substantial evidence, and the Court is not permitted to re-weigh the evidence or substitute its own judgment for that of the Commissioner.  See Borges v. Comm'r of Soc. Sec., 771 F. App'x 878, 882 (11th Cir. 2019) ("To the extent that Borges points to other evidence that would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of this Court's appellate review, which precludes it from re-weighing the evidence or substituting its own judgment for that of the Commissioner.").

**B.     Analysis**

Plaintiff challenges the ALJ's description of her August 19, 2019 EMG/NCS results, her September 20, 2022 physical therapy records, and a November 13, 2020 medical visit.  Doc. 13-1 at 15–17.  The ALJ cited and discussed these records in the RFC determination portion of his written decision.  R. 24–28.

*1.     Plaintiff's EMG/NCS results.*

Plaintiff argues the ALJ's written decision contains a description of Plaintiff's EMG/NCS results that is inconsistent with the record evidence.  In his written decision, the ALJ states:

> On August 19, 2019, the claimant complained of back pain.  However, the physical exam was essentially normal.  She had normal gait and posture and EMG/NCS results were within normal limits.  In addition, lumbar MRI was

unremarkable showing small disc bulge at L4-5, L5-S1 and no central stenosis of for[a]minal stenosis.

R. 26.  However, the EMG/NCS results states:

Conclusion—This is an abnormal study.  Electrophysiological findings are consistent with L5 S1 radiculopathy.  There is no evidence of acute lumbar sacral radiculopathy or myopathy in left lower extremity.  Imaging study of the lumbar sacral spines is recommended.

R. 490.  Plaintiff argues the "ALJ's statement in the hearing decision is clearly incorrect about the significant finding from this testing," and this incorrect statement supports reversal.  Doc. 13-1 at 15.

The Commissioner concedes "the ALJ made that misstatement when discussing the test," but argues "Plaintiff has shown no error."  Doc. 16 at 10.  The Commissioner explains the ALJ determined left lower extremity radicular pain was a severe impairment at step two, so the ALJ's statement about the EMG/NCS test implies a scrivener's error.  Id.  The Commissioner argues the EMG/NCS evidence supports a diagnosis of radicular pain, the ALJ acknowledged this radicular pain diagnosis at step two, and the ALJ ultimately made his RFC determination based on substantial evidence in the record.  Id.

The Commissioner's argument is persuasive.  The ALJ's RFC assessment is supported by substantial evidence, regardless of his characterization of the EMG/NCS study.  The EMG/NCS results are not a medical opinion or diagnosis.  A physician at Dublin Physical Medicine Rehabilitation, Dr. Joseph Hardman, ordered the study, and another physician, Dr. Nikolay Bangiyev, conducted the EMG/NCS and entered the results found in the record.  R. 486–92.  The ALJ considered the entire Dublin Physical Medicine Rehabilitation record and accurately stated most of its contents.  R. 26–27.  Although the ALJ's decision misstates one of the test results

therein, the rest of this record, along with the other treatment records the ALJ discussed, provides substantial evidence in support of the RFC determination.

### 2. Plaintiff's physical therapy records.

Plaintiff argues the ALJ mischaracterized a record of her September 20, 2020 physical therapy visit.  Doc. 13-1 at 15–16.  The ALJ's written decision states:

> The claimant continued conservative treatment for her right knee pain and back pain through physical therapy.  In fact, therapy records in September 2020 noted good progress, as the claimant was able to perform treatment exercises appropriately, and she did not report complaints of pain intermittently.

R. 27.  Plaintiff asserts there is nothing in the physical therapy record the ALJ cited stating Plaintiff was making good progress.  Doc. 13-1 at 15.  Plaintiff argues the record of this visit instead shows Plaintiff's complaints of pain and limited mobility, and it "clearly shows that [Plaintiff] was still having significant problems.  Id. at 16.

In response to Plaintiff, the Commissioner argues, "[T]he ALJ acknowledged Plaintiff's complaints of pain and, in fact, restricted her functional capacity even more than the state agency medical consultants to account for her pain."  Doc. 16 at 11.  The Commissioner asserts Plaintiff's real quarrel "is that the ALJ failed to place more significance on certain pieces of evidence."  Id.

Nothing about the ALJ's characterization of the September 20, 2020 physical therapy record supports remand or reversal.  Although that record does not explicitly state "good progress," the ALJ may have reasonably determined the contents of the record indicated "good progress."  Plaintiff acknowledges "[t]he note does state that [Plaintiff's] rehab potential was 'good.'"  Doc. 13-1 at 15.  The record also states Plaintiff "tolerated [treatment] well" and was "able to perform all [therapeutic exercises] appropriately."  R. 661.  Although the record states Plaintiff "did report complaints of pain intermittently," id., contrary to the ALJ's description of

the record, R. 27, the overall record contains support for the ALJ's assessment that the record

suggests "good progress."  To conclude otherwise would require this Court to reweigh the

evidence, which it may not do.

### 3.  Plaintiff's November 13, 2020 treatment record.

When discussing Plaintiff's November 13, 2020 medical visit, the ALJ stated Plaintiff

"was only treated conservatively with right knee steroid injection" and "there was no

recommendation for surgical intervention."  R. 27.  Plaintiff argues "there is no mention in the

record that performing a steroid injection in the knee was 'conservative' treatment," and "the

note does not indicate that right knee surgery was ever discussed nor is it mentioned at all in the

note."  Doc. 13-1 at 16.

Again, Plaintiff challenges the ALJ's characterization and assessment of the record

evidence.  While one could possibly characterize the November 13, 2020 record differently, the

substantial evidence supports the ALJ's characterization and assessment of the record.  The ALJ

determined Plaintiff's injection treatment was "conservative" and found it significant right knee

surgery was not considered.  "[The court] may not decide facts anew, reweigh the evidence, or

substitute [the court's] judgment for that of the Commissioner."  Dyer, 395 F.3d at 1210.  The

ALJ's RFC assessment is supported by substantial evidence, despite Plaintiff's critiques of the

written decision.  Thus, I find no error in ALJ Casher's RFC assessment or the characterization

of the evidence.

## VI.   Evidence Plaintiff Presented to the Appeals Council Does Not Warrant Remand

After ALJ Casher denied Plaintiff's claim on February 3, 2021, Plaintiff submitted two

additional medical records for the Appeals Council to review.  R. 8–12.  The Appeals Council

denied Plaintiff's request to review ALJ Casher's decision, concluding one of the additional

records did not show a reasonable probability it would change the outcome of the decision and the other additional record did not relate to the period at issue.  R. 1–2.  Plaintiff argues the Appeals Council's denial of the request to review the decision is erroneous.  Doc. 13 at 17–18.

### A.    Legal Standard

"'With a few exceptions, a claimant is allowed to present new evidence at each stage of the administrative process,' including before the Appeals Council."  Washington v. Soc. Sec. Admin., Comm'r, 806 F.3d 1317, 1320 (11th Cir. 2015) (quoting Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007)).  "The Appeals Council will review a case if it 'receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.'"  Pupo v. Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1063 (11th Cir. 2021) (quoting 20 C.F.R. § 416.1470(a)(5)).  "[W]hen the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate."  Washington, 806 F.3d at 1321.  The Court reviews de novo whether the Appeals Council erroneously refused to consider evidence.  Id.

The Appeals Council is not required to provide a detailed explanation when denying a request to review and consider newly submitted evidence.  See Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin., 783 F.3d 847, 852–53 (11th Cir. 2015) (concluding the Appeals Council is not required to make specific findings of fact when it denies review, regardless of whether the new evidence is deemed cumulative or not chronologically relevant); Mitchell v. Comm'r of Soc. Sec., 771 F.3d 780, 784–85 (11th Cir. 2014) (concluding the Appeals Council was not required to provide a detailed discussion of the claimant's new evidence when denying a request for review).

### B.    Analysis

Plaintiff submitted two medical records from two of Plaintiff's appointments with The Hughston Clinic on January 13, 2021, and April 26, 2021, respectively.  R. 35– 38 (record related to the January 13, 2021 appointment); R. 8–12 (record related to the April 26, 2021 appointment).  The January 13, 2021 appointment occurred after hearing before the ALJ on November 17, 2020, but before the ALJ issued his decision on February 3, 2021.

The record from the January 13, 2021 appointment states that the purpose of the appointment was "follow-up reevaluation of [Plaintiff's] right knee."  R. 37.  According to this record, Dr. Dustin Gay at The Hughston Clinic examined Plaintiff, and the record contains various exam findings about the status of Plaintiff's right knee problems and a discussion of Plaintiff's experiences with injections in her knee.  Id.  In terms of the assessment or treatment plan, Dr. Gay determined Plaintiff had "[c]ontinued right knee pain with patellofemoral osteoarthritis" and recommended Plaintiff enter into physical therapy and stated Plaintiff's medication regimen would be changed.  R. 38.

The record from the April 26, 2021 appointment shows the purpose of the appointment was "reevaluation of [Plaintiff's] bilateral knees" and states Plaintiff wished "to discuss more definitive treatment options."  R. 10–11.  According to this record, Dr. Gay examined Plaintiff, and the record contains various exam findings about the status of Plaintiff's right knee problems and a discussion of Plaintiff's experiences with injections in her knees.  Id.  In terms of the assessment or treatment plan, Dr. Gay determined Plaintiff had "[b]ilateral knee osteoarthritis" and "grade 4 osteoarthritis of both knees."  R. 11–12.  Dr. Gay gave Plaintiff an injection in her left knee at the appointment.  Id.  Dr. Gay also recommended Plaintiff have a "right total knee

arthroplasty" given that conservative treatment measures had failed and discussed next steps with Plaintiff.  Id.

The Appeals Council stated the two records Plaintiff submitted did not support review of the ALJ's decision.  R. 2.  Specifically, the Appeals Council concluded the January 13, 2021 record did not show a reasonable probability it would change the outcome of the decision.  R. 2. The Appeals Council concluded the April 26, 2021 record did not relate to the period at issue. Id.

Plaintiff argues the Appeals Council erred because the additional records are chronologically relevant (that is, the records relate to the period on or before the date of the hearing decision), the records are material, and the records present a reasonable probability they would change the outcome of the decision.  Specifically, Plaintiff argues the additional records "show[] that Dr. Gay's various measures designed to try to address [Plaintiff's] right knee problems short of surgery were not successful," and "the additional evidence from Dr. Gay directly contradicts a major basis the ALJ used to discount [Plaintiff's] claim of disabling symptoms, namely, the lack of a recommendation for surgery."  Doc. 13-1 at 18.  The Commissioner disagrees with each of these arguments.

> ### 1. The record from the January 13, 2021 appointment does not show a reasonable probability it would change the outcome of the ALJ's decision.

The Appeals Council concluded the January 13, 2021 appointment record does not show a reasonable probability that it would change the outcome of the decision.[2]  R. 2.  Plaintiff argues this is error.

---

[2]     The January 13, 2021 appointment occurred before the ALJ issued his February 3, 2021 decision. Thus, there is no indication the record is not chronologically relevant.  Instead, the only issue is whether

Plaintiff has not shown there is any reasonable probability the information contained in the January 13, 2021 record would change the outcome of ALJ Casher's decision.  This doctor's opinion contains a description of Plaintiff's daily knee pain, a recommendation for "therapy to work on some quad strengthening," and a change in Plaintiff's medication regimen.  However, the ALJ had evidence of each of these before him at the time of his decision.  The ALJ discussed several sources of evidence for Plaintiff's right knee pain and right knee arthritis.  R. 26–27.  The ALJ discussed Plaintiff's physical therapy progress.  R. 27.  The record before the ALJ indicated Plaintiff took Celebrex.  R. 339.  It is not reasonably probable the January 13, 2021 treatment record would have impacted the ALJ's decision in any way, including causing any change to the ALJ's RFC determination or his overall disability determination.  As a result, Plaintiff has not shown any error by the Appeals Council regarding its assessment of the January 13, 2021 treatment record.

### 2.   *The April 26, 2021 treatment record is not chronologically relevant.*

The Appeals Council determined the April 26, 2021 treatment record did not relate to the period before the ALJ issued his decision (i.e., the record was not chronologically relevant), and, therefore, did not affect the ALJ's disability determination.  R. 2.  Plaintiff argues this conclusion was erroneous.  The Commissioner argues the April 26, 2021 record was not chronologically relevant or material.

The Appeals Council must consider evidence submitted by a claimant after the ALJ's decision "it if it is new, material, and chronologically relevant."  Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1309 (11th Cir. 2018) (citing 20 C.F.R. §§ 404.970(b), 416.1470(b)

---

the Appeals Council erred in concluding the record does not show a reasonable probability it would change the outcome of the decision.

(2016)).  Such evidence is "chronologically relevant" if it "relates to the period on or before the

date of the [ALJ's] hearing decision."  Id.  Whether new, post-decision evidence relates back to

the period on or before the ALJ's decision depends on the specific circumstances of the

evidence, which may include whether the evidence originated with medical source who treated

the claimant during the relevant period, whether the medical source relied on medical records

from the relevant period, and whether the source expressly related any opinion back to the

relevant period.  See, e.g., Washington v. Soc. Sec. Admin., Comm'r, 806 F.3d 1317, 1323 (11th

Cir. 2015) ("[I]n the specific circumstances of this case, Dr. Wilson's opinions are

chronologically relevant, even though his evaluation occurred after the date of the ALJ's

decision."); Howze v. Soc. Sec. Admin., No. 21-11066, 2022 WL 152236 (11th Cir. Jan. 18,

2022) (concluding post-decision treatment records were not chronologically relevant based on

the specific circumstances of those records); Pupo, 17 F.4th at 1063 (concluding Appeals

Council erred in erred in refusing to consider new, material chronologically relevant post-

decision evidence showing claimant had surgery to address stress urinary incontinence,

particularly where the ALJ did not consider claimant's impairment to be severe and failed to

consider the impairment in assessing claimant's RFC); Lindsey v. Comm'r of Soc. Sec., 741

F. App'x 705, 711 (11th Cir. 2018) (concluding new, post-hearing evidence was not

chronologically relevant based on the unique circumstances of that evidence).

Ultimately, I conclude the April 26, 2021 treatment record from Dr. Gay does not relate

back to the time before the ALJ's February 3, 2021 decision.  It is undisputed Dr. Gay treated

Plaintiff both before and after the ALJ issued his decision.  But this fact is not determinative.

See Howze, 2022 WL 152236 at *3 (concluding records were not chronologically relevant,

despite the source treated the claimant before and after the ALJ issued a decision).  Importantly,

Plaintiff relies on only one aspect of the April 26, 2021 record in arguing the Appeals Council

erred: Dr. Gay's recommendation for Plaintiff to have surgery on her right knee.  Therefore, the

inquiry must focus on whether Dr. Gay's surgery recommendation relates back to the period

before the ALJ issued his decision.

There is no indication Dr. Gay relied on any past medical records in recommending

Plaintiff have surgery on her right knee.  In fact, Dr. Gay's April 2021 opinion affirmatively

states, "Past Medical History not reviewed," "Surgical History not reviewed," "Social History

not reviewed," and "Family History not reviewed."  R. 10.  The opinion lists "Reviewed

Problems"; however, this list shows "Osteoarthritis of right knee joint–Onset: 04/26/2021,"

indicating Dr. Gay's surgery recommendation may not apply to the time before this record.[3]

Further, the opinion describes an April 26, 2021 imaging study resulting in "Overall impression

is grade 4 osteoarthritis of both knees."  R. 12.  This suggests Dr. Gay's surgery recommendation

was largely based on an imaging study conducted outside of the relevant period.

Additionally, nothing in the April 26, 2021 record suggests Dr. Gay intended for his

surgical recommendation to relate back to the relevant period.  In other words, nothing in the

record suggests Dr. Gay believed Plaintiff needed right knee surgery before February 3, 2021.

The record does not contain any express statement by Dr. Gay he would have recommended

Plaintiff should have surgery prior to the April 26, 2021 visit, though an express statement is not

necessarily required.  See Washington, 806 F.3d at 1322 (concluding new, post-decision

---

[3]      It is unclear why Dr. Gay identified April 26, 2021, as the onset date of Plaintiff's right knee
osteoarthritis.  Earlier records—including the January 13, 2021 record from Dr. Gay—discuss Plaintiff's
right knee osteoarthritis, suggesting the condition manifested before the April 26, 2021 date.  R. 38, 701.
Indeed, the ALJ identified right knee osteoarthritis as one of Plaintiff's severe impairments in his
February 3, 2021 decision.  Regardless, the fact Dr. Gay identified the onset date as April 26, 2021, in his
own treatment records further suggests Dr. Gay was not relying on past medical records and was not
relating his surgical recommendation back to the relevant period.

evidence was chronologically relevant even though the medical source "never explicitly stated that his opinions related back to the date of the ALJ's decision").  But there is also nothing about the record that implies Dr. Gay intended for his surgical recommendation to relate back to the relevant period.  To the contrary, Dr. Gay merely stated he recommended Plaintiff for surgery based on her present circumstances and the failure of conservative treatments.

Plaintiff also argue there is no evidence her condition deteriorated or worsened after the ALJ's decision, which would suggest Dr. Gay's surgical recommendation was intended to relate back to the relevant period.  Doc. 19 at 7.  But the January 13, 2021 and April 26, 2021 records do suggest a continued deterioration.  For example, in the January 13, 2021 record, Dr. Gay stated Plaintiff reported "ongoing worsening of symptoms."  R. 37.  Additionally, when comparing the January 13, 2021 record with April 26, 2021 record, it is clear Plaintiff initially reported some relief from injections but, at the second visit, reported the injections did not provide adequate relief.  Plaintiff also reported at the August 26, 2021 visit she had daily swelling of the knees, pain with all standing and walking activities, and night pain (especially on the right side)—all symptoms that were not identified in the January 13, 2021 record.  Finally, in the January 13, 2021 record, Dr. Gay stated Plaintiff suffered from "[c]ontinued right knee pain with patellofemoral osteoarthritis," but in the August 26, 2021 record, Dr. Gay diagnosed Plaintiff with "grade 4 osteoarthritis of both knees."  At a minimum, these aspects of the medical records undermine Plaintiff's contention there is no evidence her condition worsened or deteriorated after the ALJ's decision.

Based on all of these circumstances, Plaintiff has not demonstrated the April 26, 2021 treatment record relates back to the time on or before the date of the ALJ's decision.

Accordingly, I find no error in the Appeals Council's decision not to consider the additional evidence.[4]

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **AFFIRM** the ALJ's decision.  I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't

---

[4]     The Commissioner also argues the Appeals Council properly rejected the request for review because the April 26, 2021 record does not contain any "material" evidence.  Doc. 16 at 16.  Specifically, the Commissioner argues there is no reasonable probability that Dr. Gay's recommendation Plaintiff have right knee surgery would have changed the ALJ's decision.  On the other hand, Plaintiff argues the April 26, 2021 record is material because the ALJ mentioned in his decision no medical source had recommended Plaintiff have surgery on her right knee.  Doc. 19 at 8 (citing R. 27).  As a threshold matter, it is unclear if this Court can even consider whether the April 26, 2021 record was material, given that the Appeals Council ostensibly relied only on the chronological relevance of the record when refusing to consider it.  See R. 2 ("This additional evidence does not relate to the period at issue.  *Therefore*, it does not affect the decision about whether you were disabled beginning on or before February 3, 2021." (emphasis added)); compare Howze, 2022 WL 152236, at *3 (suggesting, but not concluding, a district court should not assess materiality of new evidence where the Appeals Council rejected the evidence solely on the basis of chronological irrelevance) with Hargress, 883 F.3d at 1310 (addressing the materiality of new evidence even though the Appeals Council's decision focused on chronological irrelevance).  To the extent this Court can consider the materiality of the April 26, 2021 record, the Commissioner has the better argument.  There is no indication a surgical recommendation by one source would have changed the ALJ's decision.  That recommendation does not suggest Plaintiff would have a reduced RFC after the surgery or would in any way be unable to perform fewer jobs available in the national economy.  Although the ALJ mentioned the absence of any surgical recommendation in his decision, he did not attach any special significance to that fact or indicate a recommendation for surgery would have changed his analysis.  Instead, the ALJ's statement was a brief remark made in the context of describing one of Plaintiff's medical records.  R. 27.  Thus, I conclude the April 26, 2021 medical record was not material, and this would be another reason to find the Appeals Council did not err in refusing to review the ALJ's decision based on that record.

Station #4, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 2020 WL 6039905, at *4; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 1st day of March, 2023.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

24